IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANDRE D. McCLENDON, | ) | No. C 09-0647 MMC (PR) |
| Petitioner, | ) ) | **ORDER GRANTING RESPONDENT'S SECOND MOTION TO DISMISS PETITION AS UNEXHAUSTED; DIRECTING PETITIONER TO FILE SECOND AMENDED PETITION OR REQUEST FOR STAY** |
| v. | ) ) | |
| JAMES TILTON, Director, California Department of Corrections and Rehabilitation, | ) ) ) | |
| Respondent. | ) ) | |
| _____ | ) | **(Docket No. 14)** |

On February 13, 2009, petitioner, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Thereafter, the Court granted respondent's motion to dismiss the petition as a "mixed" petition that contained both exhausted and unexhausted claims, and directed petitioner either to file an amended petition that included only his exhausted claims and omitted the unexhausted claims, or to file a request for a stay of this matter for the purpose of exhausting his unexhausted claims in state court. On October 27, 2010, petitioner filed an amended petition. Now before the Court is respondent's second motion dismiss the petition as a "mixed" petition, on the ground the amended petition fails to omit all of petitioner's unexhausted claims. Petitioner has not filed an opposition.

## BACKGROUND

On August 26, 2003, a jury convicted petitioner of torture and abuse of his girlfriend's five-year-old daughter. Cal. Penal Code §§ 206, 273(a)(1). The jury also found petitioner used a deadly and dangerous weapon within the meaning of Penal Code section 12022(b)(1), and personally inflicted great bodily injury within the meaning of Penal Code section 12022.7(a). On June 8, 2004, the trial court sentenced petitioner to prison for life with the possibility of parole.

The California Court of Appeal affirmed the judgment. Thereafter, petitioner filed a pro se petition for review in the California Supreme Court. He claimed the trial court erred in denying his severance motion, in failing to give accomplice instructions, and in admitting evidence concerning plea negotiations; he also claimed ineffective assistance of trial counsel on numerous grounds. (Dkt. No. 5 Ex. 1.) The Supreme Court denied review on November 15, 2006. (Id.)

On February 5, 2008, a petition for a writ of habeas corpus was filed in the California Supreme Court on petitioner's behalf by his retained state habeas counsel. The petition raised the following claims: introduction, by both the prosecution and petitioner's co-defendant, of false evidence at trial; insufficiency of the evidence to support petitioner's conviction; prosecutorial vouching amounting to misconduct; ineffective assistance of trial counsel, on numerous grounds; improper jury instructions on the elements of torture; and failure of the court to instruct sua sponte on the lesser included offenses of child abuse and felony child endangerment. (Dkt. No. 5 Ex. 2.) On February 11, 2009, the Supreme Court issued an order without citation or comment, summarily denying habeas relief. (Dkt. No. 8 Ex. A.)

In March 2008, petitioner submitted to the California Supreme Court a 61-page pro se supplemental petition, asserting the following additional claims: additional instances of false evidence introduced at trial by the prosecution and petitioner's co-defendant; additional instances of ineffective assistance of trial counsel; ineffective assistance of appellate counsel; additional instances of prosecutorial misconduct; and double jeopardy. (Dkt. No. 7 Ex. 2;

Dkt. No. 8 Ex. A.)

Plaintiff's original federal habeas petition alleged claims raised by petitioner in his petition for review in the California Supreme Court; claims raised by petitioner's attorney in the state habeas petition filed with the California Supreme Court; and claims raised by petitioner in the supplemental state habeas petition he submitted to the California Supreme Court. On September 27, 2010, the Court granted respondent's first motion to dismiss, on the ground that the claims raised in petitioner's pro se supplemental petition to the California Supreme Court were unexhausted because they were not fairly presented to that court for review. (See Dkt. No. 10.) The Court gave petitioner the option of filing an amended petition that included only his exhausted claims.

The October 27, 2010 amended petition raises the following claims: introduction, by both the prosecution and petitioner's co-defendant, of false evidence at trial; ineffective assistance of counsel, on numerous grounds; prosecutorial misconduct; and error by the trial court in denying petitioner's severance motion. Respondent asserts the amended petition retains some unexhausted claims that the Court previously dismissed.

## DISCUSSION

A.  Exhaustion Requirements

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by providing the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b)-(c). The exhaustion-of-state-remedies doctrine reflects a policy of federal-state comity to give the state "an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation and citation omitted). A federal district court must dismiss a federal habeas petition containing any claim as to which state remedies have not been exhausted. Rhines v. Webber, 544 U.S. 269, 273 (2005).

The exhaustion requirement is satisfied only if a federal claim has been "fairly

presented" to the state courts.  Picard, 404 U.S. at 275.  It is not sufficient to raise only the facts supporting the claim; rather, "the constitutional claim . . . inherent in those facts" must be brought to the attention of the state court.  See Picard, 404 U.S. at 277.  The state's highest court must "be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  Duncan v. Henry, 513 U.S. 364, 365-66 (1995); see, e.g., Dye v. Hofbauer, 546 U.S. 1, 3-4 (2005) (finding federal due process claim based on prosecutorial misconduct fairly presented where text of brief cited 5th and 14th Amendments and federal cases concerning alleged violation of federal due process rights in context of prosecutorial misconduct).

In order to appropriately exhaust his factual allegations in state court, a petitioner must present a "thorough description of the operative facts before the highest state court."  Kelly v. Small, 315 F.3d 1063, 1069 (9th Cir. 2002), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007).  New factual allegations do not render a claim unexhausted, however, unless they "fundamentally alter the legal claim already considered by the state courts."  Vasquez v. Hillery, 474 U.S. 254, 260 (1986); Nickerson v. Roe, 260 F. Supp. 2d 875, 891 (N.D. Cal. 2003), overruled on other grounds by Lee v. Lampert, 610 F.3d 1125, 1134 (9th Cir. 2010).  Thus, in habeas proceedings, federal courts may not entertain new evidence that was never presented to the state courts and "'places the claim in a significantly different posture.'"  Nickerson, 260 F. Supp. 2d at 891 (quoting Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir.1988)).

B.  Analysis

The Court has compared the amended petition with the petition for review filed in the California Supreme Court and the petition for writ of habeas corpus filed in the California Supreme Court, to determine whether all the claims in the former were included in one or both of the latter two documents.  The Court turns next to the four claims respondent challenges as unexhausted.

//

//

4

### 1. Falsified Evidence Claim/Dr. Ebert

In his state habeas petition, petitioner claimed the prosecution introduced false evidence at trial. Relevant to the instant motion, one of the categories of allegedly false evidence was "forged or altered photographs of the victim's injuries." (Dkt. No. 5 Ex. 2 at 4.) Specifically, petitioner argued the prosecution introduced photographs that purported to depict the injuries petitioner allegedly inflicted on his girlfriend's five-year-old daughter. (Id. at 6.) In his state petition, petitioner identified numerous facts purportedly showing the photographs were falsified. Petitioner alleged: (1) the size of the injuries in the photographs did not match the measurements taken by the treating nurse; (2) petitioner's grandmother testified she saw a burn on the victim that did not match the injuries in the photographs; (3) the dates displayed on the photographs did not match the dates on which they were purportedly taken; (4) John C. Hiderot, M.D. ("Dr. Hiderot"), a forensic pathologist hired by petitioner after the trial, analyzed the photographs and found problems with the dates displayed on the photographs; (5) Dr. Hiderot determined the injuries depicted in the photographs did not require the medical treatment the victim received; (6) the photographs depicted a bruise under the victim's left eye that the treating physician and nurse did not recall seeing; (7) the stage of healing and dead skin depicted in the photographs was inconsistent with the short period of time between the date the photographs purportedly were taken and the date the injuries allegedly occurred; (8) the high degree of pain that would be expected at the time the photographs purportedly were taken was inconsistent with the smile on the victim's face as depicted in the photographs; (9) the injuries depicted in the photographs were at different stages of healing; and (10) one of the injuries depicted in the photographs was inconsistent with a description, given by one of the testifying police officers, regarding that same injury. (Id. at 6-9.) Petitioner also made the following passing reference in his state petition:

> Petitioner enlisted the assistance of a private investigator who measured the metal tube which was the alleged weapon in the burning. These measurements also did not comport with those depicted in the photographs.

(Id. at 6.)

5

In the amended petition, petitioner identifies an additional fact purportedly showing falsification of the photographs. Specifically, petitioner states that, following trial, he hired a photogrammetrist, James Ebert ("Dr. Ebert"), to analyze the accuracy of the measurements taken by the victim's treating nurse, Nurse Berriman. (Dkt. No. 11 at 14.)[1] Petitioner describes Dr. Ebert and his findings as follows:

> After trial, petitioner consulted with Dr. James L. Ebert, a certified Forensic Photogrammetrist to determine the truth of the matter.
>
> Instead of measuring the injury from outer edge to outer edge as Nurse Berriman claimed to have done, Dr. Ebert only measured the spared area of the injury in the photos with measuring devices (exhibit #6). In addition, petitioner employed the services of a private investigator to measure the tube at Alameda County Court House (exhibit #7). The results revealed, the end of the pole has a hole that measures 2.4 cm in diameter. In addition, the hole on the side of the pole measures 0.9 cm in diameter. The above measurement is from inside to inside. The reason petitioner focused on the diameter of the holes on the pipe is because, it will provide an absolute and mathematical foundation to determine if the metal pipe could have actually caused the injuries in the photographs. This can be done by comparing the diameter of the hole in the tube to the spared area of skin in the photos.
>
> Hence, Dr. Ebert inserted the photos (exhibit #8) into AutoCAD, to scale the images using the measuring devices in the photos to measure the spared area of the skin in the injuries. The prosecution claimed, Jacinda's right leg and abdomen injuries were caused by a direct brand from the end of the pipe and the side of the pole caused the injuries on Jacinda's left hand and left leg.
>
> Dr. Ebert concluded that, the injury on the right leg had a spared area of 2.39 cm. The abdomen injuries had a spared area of 2.54 cm. The left hand had a spared area of 1.14 cm. The left leg had a spared area of 1.37 cm. The right leg had a spared area of 2.56 cm. All measurements are of the diameter of the spared areas of skin.
>
> Dr. Ebert concluded that, since the diameter of the hole in the end of the tube is only 2.4 cm, it is impossible for it to have caused the abdomen injury (2.54 cm) and the injury on the right leg (2.56 cm spared area). In addition, since the hole on the side of the pole is 0.9 cm in diameter, it could not have caused the injury on the left hand with a spared area of 1.14 cm or the injuries on the left leg with spared areas of 1.37cm.
>
> More telling, is that the hole on the side of the pole, which is 0.9 cm in diameter, cannot have left a spared area of 1.14 cm or 1.37 cm. That equates to a difference of 0.24 and 0.47 cm or a 27% and 52% increase in diameter. Thus, it is mathematically impossible that the metal tube in question caused the injuries in the photos.

---

[1] The page numbers used herein for this document refer to those affixed to the top of the page by the court's electronic filing program.

(Dkt. No. 11 at 13-14.) Petitioner attaches to his amended petition Dr. Ebert's report and curriculum vitae. (Dkt. No. 12 Ex. 6.)

As respondent points out, petitioner never discussed Dr. Ebert or his findings in his state petitions. Respondent argues to the extent petitioner now relies on Dr. Ebert's findings to support his claim of falsified evidence, the claim is unexhausted. The Court agrees.

In his amended petition, petitioner claims to have exhausted this factual allegation by his reference in his state habeas petition to "a private investigator who measured the metal tube." (Dkt. No. 11 at 3.) The private investigator who measured the tube, however, was not Dr. Ebert, but rather a "Michele Gandy." (Dkt. No. 11 at 13; Dkt. No. 11 Ex. 7.) Dr. Ebert did not measure the tube. According to the amended petition and exhibits thereto, Dr. Ebert measured the "wound patterning" from the photographs. (Dkt. No. 11 at 13-14; Dkt. No. 12 Ex. 6.) Further, petitioner's passing reference to a private investigator in his state habeas petition is insufficient to exhaust the quite detailed factual allegations raised herein relating to Dr. Ebert's findings. The private investigator was mentioned in the state habeas petition in a way that virtually guaranteed it would fail to lead to any relief.

Upon review of the record, the Court concludes the findings of Dr. Ebert fundamentally alter the nature of petitioner's falsified evidence claim so as to render the claim unexhausted. See Vasquez, 474 U.S. at 260 (holding new factual allegations render a claim unexhausted where they "fundamentally alter" the claim already considered by the state courts); Aiken v. Spalding, 841 F.2d 881, 883 (9th Cir.1988) ("[Where] a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it, the state courts must be given an opportunity to consider the evidence.") (alteration in original).[2]

---

[2] The Ninth Circuit in Aiken, dismissed a habeas petition as unexhausted where the petitioner attempted to present new evidence on the issue of whether interrogating officers heard and ignored his requests for counsel. Aiken, 841 F.2d at 883. The new evidence consisted of decibel-level studies by an expert who examined the original tape recordings using sound equipment. Id.

7

Because the California Supreme Court has not had opportunity to "pass upon" petitioner's assertion that Dr. Ebert's findings show the prosecution presented falsified evidence at trial, see Picard, 404 U.S. at 275, petitioner's falsified evidence claim must be dismissed.

### 2. Ineffective Assistance of Trial Counsel Claim/Failure to Object to Co-defendant's Accusations

In his original and amended federal petitions, petitioner claims trial counsel was ineffective for not objecting to the "many prejudicial accusations from co-defendant Cuellar." (Dkt. No. 1 at 50; Dkt. No. 11 at 53.) Although in his petition for review and in his habeas petition in the California Supreme Court, petitioner did not assert his trial counsel was ineffective for failure to object to "prejudicial accusations," (see Dkt. No. 5 Ex. 1 at 21-24 & Ex. 2 at 16-21), any distinction between such claims and those presented here appears to be semantical rather than substantive. As petitioner clarifies in his amended petition, he is challenging trial counsel's failure to object to evidence of uncharged offenses, introduced through the testimony of his co-defendant. (Dkt. No. 11 at 2-3.) This claim was presented to the California Supreme Court by way of the petition for review, wherein petitioner asserted trial counsel allowed petitioner's co-defendant to testify to over forty prior acts of violence assertedly having nothing to do with the charges. (Dkt. No. 5 Ex. 1 at 21.)

Accordingly, state judicial remedies have been exhausted for such claim.

### 3. Falsified Evidence Claim/911 Tape

In his amended petition, petitioner claims his co-defendant presented a false 911 tape at trial. (Dkt. No. 11 at 26-29.) Petitioner states that, after trial, he made several unsuccessful attempts to obtain a copy of the tape and finally filed a petition for a writ of mandate to obtain the tape. (Id. at 27-28.) Petitioner further states the City Attorney responded to the writ petition with a letter from the Public Safety Dispatcher claiming the tape had been destroyed pursuant to department protocol on preservation of recordings. (Id. at 28.) The Alameda County Superior Court ordered a hearing on the writ petition and ultimately denied discovery of the 911 tape on the ground there was no basis to believe the

8

tape existed. (Id. at 5, 28; Dkt. No. 11 Ex C.) Respondent argues petitioner failed to appeal the ruling on the writ petition to the California Supreme Court, rendering this claim unexhausted.

Petitioner is not challenging the outcome of the writ proceeding in the instant action. Rather, in his amended petition, petitioner states he "accepts" the ruling on the writ petition, but is "arguing that the tape played at his trial was false." (Dkt. No. 11 at 5.) Petitioner raises the writ petition and the proceedings attendant thereto in the instant action as part of the factual basis for his falsified evidence claim. Petitioner presented similar facts in his state habeas petition. (Dkt. No. 5 Ex. 2 at 13.) While petitioner did not specifically reference the writ of mandate proceedings in his state petition, he raised the relevant facts from such proceedings. Specifically, petitioner stated:

> The lack of preservation of the 911 call indicates that it was false because Kimberly A. Reeves, Supervising Public Safety Dispatcher indicated to Petitioner that the dispatch of the call was destroyed three (3) years prior to May 2006. Mrs. Reeves indicated in writing that the 911 department only has room to preserve recordings for one year, and the 911 recording requested no longer exists. If the actual 911 call was produced for trial, as Petitioner's co-defendant suggested, California Government Code § 26202.06 would have imposed a duty on the 911 agency to preserve the recording of a dispatch call once the agency was notified of pending litigation. . . .

(Id.)

Although petitioner does not allege precisely the same facts in support of his federal petition as he alleged in support of his state habeas petition on this claim, he has presented the same "operative facts." See Kelly, 315 F.3d at 1069. The addition of references to the state writ proceedings in the amended petition does not "fundamentally alter" the claim. See Vasquez, 474 U.S. at 260.

Accordingly, the Court finds petitioner fairly presented this claim and it is properly exhausted.

### 4.    Ineffective Assistance of Appellate Counsel Claim

Finally, respondent points to a reference, in the amended petition, to ineffective assistance of appellate counsel. The inclusion of such reference appears to be an oversight, given petitioner concedes he failed to exhaust his claim of ineffective assistance of appellate

9

counsel.  (See Dkt. No. 11 at 2.)  In any event, to the extent petitioner does assert an ineffective assistance of appellate counsel claim, such claim is subject to dismissal for the reasons given in the Court's order of September 27, 2010.

C.    Petitioner's Options

Based on the above, the Court will grant respondent's motion to dismiss the amended petition as a "mixed" petition that contains both exhausted and unexhausted claims.  See Rhines v. Weber, 544 U.S. 269, 273 (2005).  Before entering a judgment of dismissal, however, the Court must provide petitioner an opportunity to amend the mixed petition by striking his unexhausted claims as an alternative to dismissal.  See Jefferson v. Budge, 419 F.3d 1013, 1016 (9th Cir. 2005).  As a further potential alternative, the Court, under certain circumstances, may stay a mixed petition while the petitioner returns to state court to exhaust his unexhausted claims.  See King v. Ryan, 564 F.3d 1133, 1139-41 (9th Cir. 2009) (describing options for requesting stay).  Accordingly, petitioner may choose either to file a second amended petition and proceed only with his exhausted claims, or request a stay of the petition while he exhausts his unexhausted claims in state court.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Respondent's motion to dismiss is hereby GRANTED.

2. Within **thirty (30) days** of the date this order is filed, petitioner shall either: (1) file a second amended petition that includes only his exhausted claims and strikes the unexhausted claims, or (2) file a request for a stay of this matter while he exhausts his unexhausted claims in state court.

3. If petitioner chooses to file a second amended petition, he must include the caption and civil case number used in this order, No. C 09-0647 MMC (PR), as well as the words SECOND AMENDED PETITION on the first page; petitioner shall not incorporate material from the original petition or amended petition by reference.

4. If petitioner files a request for a stay, respondent shall file a response thereto within **twenty (20)** days of the date petitioner's request is filed.  The request will be deemed

10

1 submitted on the date respondent's response is due.

2     5. If petitioner fails to file either a second amended petition or a request for a stay as
3 ordered herein, the petition will be dismissed without prejudice to petitioner's later filing a
4 new petition that contains only exhausted claims.

5     This order terminates Docket No. 14.

6     IT IS SO ORDERED.

7 DATED: December 13, 2011

8 _____
MAXINE M. CHESNEY
United States District Judge

11